```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

BRISTOL HEIGHTS ASSOCIATES,  :
LLC,
                              :
   Plaintiff,
                              :   CASE NO. 3:10-CV-154(RNC)
V.
                              :
CHICAGO TITLE INSURANCE CO.,
                              :
   Defendant.

## RULING AND ORDER

On February 18, 2011, an oral ruling was issued in this case granting the defendant's renewed motion to dismiss (doc. 38). Counsel were informed that this memorandum would follow.

I. Background

In February 1, 2010, plaintiff Bristol Heights Associates, LLC brought this diversity case against defendant Chicago Title Insurance Company asserting state law causes of action relating to a title insurance coverage dispute. The complaint pleaded claims for breach of contract, misrepresentation, breach of the covenant of good fath and fair dealing, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*. The parties' dispute had been the subject of declaratory judgment litigation initiated by Chicago Title against Bristol Heights in Connecticut Superior Court in March 2007, which remained pending. See Chicago Title Insurances Co. V. Bristol Heights Associates, LLC, Case No. (XO2)UWY-CV-07-4020477-S (Complex Litigation Docket, Judicial District of

Waterbury). In the state court action, Bristol Heights had filed a counterclaim, which included the same breach of contract, bad faith and CUTPA claims contained in the complaint it filed here. On December 23, 2009, the Superior Court had granted Chicago Title's motion for summary judgment on the latter two claims, and, on February 1, 2010, it had denied Bristol Heights' motion to reargue, prompting Bristol Heights to take the extraordinary steps of commencing a new action in this court and withdrawing the state court counterclaim in full.

Chicago Title responded to the complaint filed by Bristol Heights in this court by moving to dismiss or stay this action under the Colorado River abstention doctrine, which permits a federal district court to abstain in deference to litigation in state court in exceptional circumstances. Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Chicago Title urged that Bristol Heights was engaged in improper tactical maneuvering in that it had come to federal court only after suffering an adverse summary judgment ruling on the merits of its claims in state court. Bristol Heights replied that it should be permitted to proceed in this forum because it needed a prompt adjudication of the parties' coverage dispute and was concerned about anticipated delays in the state court action. Bristol Heights emphasized that it had withdrawn the counterclaim in state court, which it claimed a right to do under state rules

of procedure. Bristol Heights urged that its withdrawal of the counterclaim undermined Chicago Title's reliance on the <u>Colorado River</u> doctrine.

On July 9, 2010, I issued an oral ruling granting the motion to stay on the basis of <u>Colorado River</u>. After weighing the relevant factors in the particular context created by Bristol Heights' unusual maneuvering,[1] I concluded that a stay was appropriate considering the reactive nature of this action;[2] the advanced stage of the state court litigation, which had been pending for almost three years;[3] and the absence of evidence

---

[1] The <u>Colorado River</u> doctrine requires consideration of the following factors: assumption of jurisdiction by either court over a res or other property; inconvenience of the federal forum; avoidance of piecemeal litigation; the order in which jurisdiction is obtained; and whether the state court proceeding will adequately protect the rights of the federal plaintiff. See <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 1983).

[2] A reactive suit is one that is filed by a party who has suffered an adverse decision in another court. See <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 363 (2d Cir. 1985); <u>Lops v. Lops</u>, 140 F.3d 927, 962-63 (11th Cir. 1998). See also <u>American Disposal Services, Inc. v. O'Brien</u>, 839 F.2d 84, 88 (2d Cir. 1988); <u>The Cadle Co. v. Cohen</u>, 173 F.3d 843 (2d Cir. 1999). A party's withdrawal of state court claims that are subsequently reasserted in a new action in federal court is strong evidence of reactive litigation. See <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1413 (9th Cir. 1989), <u>Gray v. Degussa Corp.</u>, No. 02 C 7209, 2003 WL 21659450, at *3 (N.D. Ill. July 15, 2003).

[3] Discovery in the state court action had been completed, extensive briefing and argument had taken place on cross-motions for summary judgment, the cross-motions had been decided, and a trial date had been set for February 2012 with the consent of Bristol Heights.

showing that the procedures available to Bristol Heights in state court were inadequate.[4] I recognized that if the state court restored the counterclaim to the docket and was able to accelerate the trial date, exercising federal jurisdiction would be gratuitous. See Gen. Star Int'l Indemnity Ltd. v. Chase Manhattan Bank, No. 01 CIV. 11379 AGS, 2002 WL 850012, at *11 (S.D.N.Y. May 3, 2002), aff'd, 57 Fed. Appx. 892 (2d Cir. 2003)(granting stay and declining to declare state procedures inadequate when party had failed to take advantage of state remedies).

Bristol Heights then moved in state court for a trial date before the end of 2010. On August 10, 2010, following a status conference, the state court issued an order setting the trial for February 1, 2011, the next date all counsel would be available. The state court thereby accelerated by one year the February 2012 trial date it had previously established with the consent of Bristol Heights.

Three weeks later, on August 31, 2010, Bristol Heights filed an emergency motion in this court seeking to lift the stay and

---

[4] A state procedure is inadequate if it fails to protect a party's federal rights. Woodford v. Community Action Agency of Green County, 239 F.3d 517, 525 (2d Cir. 2001). Bristol Heights complained about past and anticipated delays in the state court action but its assertions provided no basis for a determination that the procedures available in state court either had been or were likely to be inadequate, especially since it had agreed to a trial date in state court in February 2012.

4

requesting a trial here the week after Thanksgiving.  Bristol
Heights claimed that Chicago Title's counsel had succeeded in
delaying a trial in state court by failing to agree to a trial
prior to February 2011.  In support of its request for a trial in
federal court the week after Thanksgiving, Bristol Heights agreed
to voluntarily dismiss its bad faith and CUTPA claims, which had
been dismissed by the state court when it granted Chicago Title's
motion for summary judgment.  See Plaintiff Bristol Heights'
"Emergency" Motion to Lift Stay and For a 2010 Trial Date In the
Week After Thanksgiving (doc. 35) at 14 ("because of this Court's
concern over appearing to allow a claim to be revived that was
dismissed in state court, Bristol Heights agrees to dismissal of
its bad faith and CUTPA claims").

One week later, on September 8, 2010, the state court
granted Chicago Title's motion to restore Bristol Heights'
counterclaim to the state court docket in the absence of
opposition.  The order granting the motion to restore the
counterclaim explicitly referred to Bristol Heights' breach of
contract claim, but not the bad faith and CUTPA claims.

Chicago Title then filed papers in opposition to Bristol
Heights' "emergency" motion in this court.  In doing so, Chicago
Title requested that the stay under Colorado River be converted
into a dismissal with prejudice.  In support of its renewed
motion to dismiss, Chicago Title stated:

5

> [U]nless the District Court dismisses this case
> altogether, [Bristol Heights] will be further
> emboldened and will continue to utilize the Superior
> Court and District Court improperly, rearguing each
> issue in whichever forum [it] believes might yield a
> better outcome than was reached in the other. The
> Emergency Motion is exactly such a situation. [Bristol
> Heights] comes before the District Court apparently
> dissatisfied with what it achieved in Superior Court,
> but without any greater cause than it originally
> presented in July. Its case should be dismissed with
> prejudice. Respectfully, this litigant needs to be
> told that its conduct has been abusive and beyond the
> pale of reasonable behavior under federal law and
> procedure.

Defendant's Memorandum in Opposition To Emergency Motion To Lift Stay and Renewed Motion to Dismiss With Prejudice (Doc. 37) at 2-3.

In February 2011, trial began in the state court action. The trial encompassed Chicago Title's claim for a declaratory judgment and Bristol Heights' counterclaim for breach of contract.

After the trial commenced in state court, a telephone conference was convened in this case. During the call, I informed counsel that because the state court action had proceeded to trial as scheduled, Chicago Title's renewed motion to dismiss would be granted. Bristol Heights protested that its bad faith and CUTPA claims had not been restored to the state court docket. I concluded that dismissal was still warranted and therefore granted the renewed motion to dismiss.

6

II. Discussion

The Supreme Court has made it clear that a federal district court may not abstain in deference to parallel litigation in state court except in very limited circumstances. Colorado River, 424 U.S. at 813-24.[5] The Second Circuit has cautioned district judges that "abstention is appropriate only in rare circumstances and is justified neither by the mere existence of parallel state court proceedings nor by the simple administrative convenience of deferring to the state forum." The Cadle Co. v. Cohen, 173 F.3d 843, at *2 (2d Cir. 1999)(unpublished opinion). In exercising their very limited discretion to abstain, district courts must be guided by principles of "wise judicial

---

[5] The proceedings at issue here are parallel, although Bristol Heights' bad faith and CUTPA claims have not been restored to the state court docket, because the parties, issues and relief sought in both cases are substantially the same. Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998); Nat'l Union Fire Ins. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). In the state court action, Chicago Title sought a declaratory judgment that it has no liability under the title insurance contract. In this action, Bristol Heights sought a trial on its breach of contract claim, which it characterized as its "chief claim," while agreeing to voluntarily dismiss its other claims, which had been dismissed in state court. Moreover, those claims relate directly to the contract dispute. See Great American Ins. Co. v. Precision Products Corp., No. 92-1083, 1992 WL 188886, at *1 n. 2 (1st Cir. Aug. 7, 1992)(affirming abstention when federal insurance action contained additional claims not squarely related to issue of policy coverage because "the overall claims related to the basic dispute relating to coverage"). If required to respond on the merits in this court, Chicago Title undoubtedly would have taken the same position in this court that it advanced in state court. C-BASS v. Lictenfels, 658 F. Supp. 2d 355, 360 (D. Conn. 2009)(considering likely responsive pleadings when deciding if action is parallel).

7

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at *1 (internal quotations and citations omitted).

In the circumstances presented here, wise principles of judicial administration strongly favor abstention to serve the goal of avoiding piecemeal litigation of duplicative claims, particularly in view of the reactive nature of this action, the advanced stage of the state court action at the time this action was brought and the current status of the state court action. See The Cadle Company, 173 F.3d at *2.[6]

The Supreme Court has recognized that there is "considerable merit" to the idea that a suit's reactive nature may justify abstention. Moses H. Cone Memorial Hospital, 460 U.S. at 17 n. 20. Reactive suits increase litigation costs and burden courts. See Skeete v. Moon, No. 5:09-CV-326, 2009 WL 2611317, at *6 (M.D. Ga. Aug. 20, 2009). Abstaining in this case is necessary to avoid encouraging the filing of duplicative litigation in federal court in response to a state court's adverse summary judgment

---

[6] Bristol Heights has repeatedly emphasized that it is a defendant in the state court action, which it claims was filed preemptively for tactical advantage. I agree that if Bristol Heights had chosen the state forum the case for abstention under Colorado River would be even stronger. See The Cadle Company, 173 F.3d at *2. That Bristol Heights did not do so is insufficient to alter the outcome of the abstention analysis, however. Bristol Heights was content to remain in state court for nearly three years. It came to this forum only after suffering an adverse summary judgment ruling and did so in an attempt to secure a favorable disposition of the same claims.

8

ruling on state law claims.

Bristol Heights submits that dismissing this action on the basis of Colorado River constitutes an abuse of discretion, especially since its bad faith and CUTPA claims have not been restored to the docket in state court. On the record before me, however, I cannot find that the procedures available in state court are inadequate to protect whatever interest Bristol Heights actually has in these claims.[7] Given the need to avoid encouraging the tactical maneuvering engaged in here, and the need to show appropriate deference to the state courts, I conclude that leaving Bristol Heights to its state court remedies is the only course consistent with principles of wise judicial administration.

III. Conclusion

The Clerk may enter judgment dismissing the action without prejudice to further proceedings in state court.

Dated this 29th day of March 2011.

/s/  
Robert N. Chatigny  
United States District Judge

---

[7] These are the same claims Bristol Heights previously agreed to dismiss as part of its strategy to obtain a trial in this court on the breach of contract claim.